GRANOVSKY & SUNDARESH PLLC
BENJAMIN R. DELSON (Ohio Bar # 97257)
ALEXANDER GRANOVSKY  (Ohio Bar # 92900)
600 Superior Ave. East, Suite 1300
Cleveland, Ohio 44114
Tel. (216) 600-7994 / Fax (646) 417-5500
delson@g-s-law.com / ag@g-s-law.com

*Attorneys for PLAINTIFF GEORGE CARMICHAEL*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| GEORGE CARMICHAEL, on behalf of himself and all other persons similarly situated,<br><br>     *Plaintiff,*<br><br>  v.<br><br>RAM JACK OHIO LLC and RICHARD FOLLETT,<br><br>    *Defendants.* | CASE NO.:  **21-cv-01961**<br><br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT with JURY DEMAND** |

Plaintiff GEORGE CARMICHAEL ("Plaintiff" or "Carmichael"), on behalf of himself and all other persons similarly situated, upon personal knowledge as to himself and upon information and belief as to other matters, by his attorneys, GRANOVSKY & SUNDARESH PLLC, brings this action as an opt-in collective action for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., and supporting regulations ("FLSA"), and as an opt-out Rule 23 class action for violations of the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111.01-4111.99 ("OMFWSA").

1

## NATURE OF ACTION

1.    From approximately February 2021 to August 2021, Plaintiff George Carmichael was employed by Defendant Ram Jack Ohio LLC ("Ram Jack"), a company providing foundation inspection and repair services in northeastern Ohio, and by Defendant Richard Follett, the owner and operator of Ram Jack (and, together with Ram Jack, "Defendants").

2.    Carmichael worked long hours for Defendants, doing a little bit of everything: driving Defendants' vehicles, overseeing Defendants' worksites and employees, reading blueprints, operating Defendants' equipment, and generally getting the job done for Defendants.  He spent many hours every day travelling to and from worksites to provide services to Defendants' far-flung customers.

3.    But, in violation of both the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., and supporting regulations ("FLSA"), and Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111.01-4111.99 ("OMFWSA"), and as detailed below, Defendants failed to pay Carmichael any wages at all for certain hours that he worked, and failed to pay him overtime wages for hours that he worked past forty in a given week.

4.    Upon information and belief, in failing to pay Carmichael, Defendants were merely following company policy:  as detailed below, Defendants followed across-the-board pay policies that resulted in none of their hourly employees receiving all of their proper wages under FLSA or OMFWSA.

5.     Carmichael, on behalf of himself and all other similarly situated employees and former employees of Defendants, now brings this lawsuit seeking recovery against Defendants for Defendants' violations of the FLSA, and alleges that he and all others who elect to opt into this action pursuant to the collective action provisions of 29 U.S.C. § 216(b) are entitled to recover from Defendants: (1) unpaid wages; (2) unpaid overtime wages; (3) liquidated damages; and (4) attorneys' fees and costs.

6.     Carmichael also brings this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated employees and former employees of Defendants, seeking recovery against Defendants for Defendants' violation of the OMFWSA, and alleges that he and all other members of the class defined below are entitled to recover from Defendants: (1) unpaid wages; (2) unpaid overtime wages; (3) liquidated damages; and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331.

8.     This Court has subject matter jurisdiction over Plaintiff's OMFWSA claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

### Plaintiff George Carmichael

10.     Plaintiff GEORGE CARMICHAEL was and is, at all relevant times, an adult individual residing in the State of Ohio.

11.     Plaintiff brings this action as an opt-in collective action pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of himself and all other individuals employed by Defendants in Ohio to perform foundation inspection or repair services within three years of the date this Complaint was filed  (the "Collective Action Plaintiffs").

12.     Plaintiff also brings this action as an opt-out class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and and all other individuals employed by Defendants in Ohio to perform foundation inspection or repair services within three years of the date this Complaint was filed  (the "Ohio Rule 23 Class").

13.     Plaintiff, the Collective Action Plaintiffs, and the Ohio Rule 23 Class are current or former employees of Defendants within the meaning of the FLSA and the OMFWSA.

14.     At all relevant times, Plaintiff and similarly situated employees worked in interstate commerce, so as to fall within the protections of the FLSA.

15.     A written consent form for George Carmichael to serve as a party plaintiff in this action is attached as Exhibit A to this Complaint.

**Defendants Ram Jack Ohio LLC and Richard Follett**

16.     Defendant Ram Jack Ohio LLC ("Ram Jack") is an Ohio corporation, with a principal place of business located at 11709 Old State Rd., Chardon, OH 44024.

17.     According to the Ram Jack website, www.ramjack.com, "Ram Jack Ohio provides expert foundation inspection and repair services to commercial and residential customers in Cuyahoga, Lake, Geauga, Summit and surrounding counties."

18.     Defendant Richard "Skip" Follett is an adult and a resident of Ohio, who lives at 11709 Old State Rd., Chardon, OH 44024.  Mr. Follett runs Ram Jack's operation from the same property where Mr. Follett lives.

19.     Mr. Follett is the chief executive, owner and operator of Ram Jack's Chardon, Ohio location.

20.     Mr. Follett exercises near complete control over the working conditions of the employees at Ram Jack's Chardon, Ohio location.  Mr. Follett determines who is hired, who is fired, what hours each employee will be credited (and not credited) with working, and what they will be paid for their work.  Mr. Follett has near complete control over all policies and practices, including all scheduling and payroll policies.

21.     Upon information and belief, at all times relevant to this Complaint, Defendants' annual revenue has been not less than $500,000.00.

22.     At all times relevant to this Complaint, Defendants were and are an "enterprise" as defined by the FLSA, and an "enterprise engaged in commerce" under

the FLSA, and employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

23.     At all relevant times, Defendant Ram Jack and Defendant Follett were the employers of Plaintiff, the Collective Action Plaintiffs and the members of the Ohio Rule 23 Class within the meaning of the FLSA and OMFWSA.

24.     Defendants caused the violations set forth in this Complaint.

## STATEMENT OF FACTS

25.     In about February 2021, Defendants hired Plaintiff George Carmichael.

26.     Carmichael's responsibilities included performing foundation inspection or repair services for clients of Ram Jack.

27.     Carmichael's wage was $20 per hour.

28.     The man in charge of Ram Jack's Chardon Ohio location is Richard "Skip" Follett.  Mr. Follett runs Ram Jack's operation from the same property in Chardon, Ohio where Mr. Follett lives.

29.     On a typical day, Carmichael arrived at Ram Jack's Chardon location at about 6:45 or 7:00 am.

30.     Shortly after arrival, Carmichael would clock in using an electronic punch system operated by Defendants.

31.     Shortly after 7:00am there would be a morning meeting, during which Defendants' employees, including Carmichael, would receive instructions about what jobs would be performed that day, who would perform work on which job site, what

equipment and materials would be needed for each job site, and what repairs or maintenance were needed on equipment or trucks.

32.     These morning meetings lasted approximately half an hour, sometimes longer.

33.     At the conclusion of the morning meeting, the workers would begin loading equipment and materials onto trucks.  This work typically lasted at least another half hour, sometimes longer

34.     Typically, at about 8 in the morning, the morning meeting would be concluded, the trucks would be loaded, and the Defendants' workers would be departing for their job sites in the company's vehicles.

35.     It was common for job sites to be located an hour's drive or further from Ram Jack's Chardon location.

36.     Defendants made it mandatory for their workers:  (1) to congregate at Ram Jack's Chardon location first thing in the morning, (2) to attend the morning meeting to learn about their assignments, (3) to load the trucks and perform other preparatory work to get ready for their assignment, and (4) to use Defendants' vehicles to travel to job sites with their co-workers.

37.     Once at a job site, Carmichael would do a little bit of everything:  oversee other of Defendants' employees, read blueprints, operate Defendants' equipment, and generally get the job done for Defendants' customers.

38.     Skip Follett instructed Carmichael and other of Defendants' employees to make note, including on their time cards, of what time they left a job site for the day.

39.    When he was done for the day at a job site, Carmichael was required to return to Ram Jack's Chardon location in Defendants' vehicle.

40.    Upon arrival at Ram Jack's Chardon location, Carmichael would perform a further 15 or 20 minutes of work, unloading the truck and cleaning the truck and equipment.

41.    At the end of his work day in Chardon, Carmichael would clock out using the electronic punch system operated by Defendants.

42.    Depending on the nature of the job he had been assigned to that day, Carmichael might punch out as early as about 3pm, or as late as 7pm or later.

43.    Carmichael's average day was about 10 hours long, but occasionally it was much longer.

44.    For example, in about June of 2021, Carmichael was assigned to a job in Port Clinton, a long drive from Chardon.  On the two days that he worked on that Port Clinton job, he worked from about 5am until about 9pm.

45.    Carmichael typically worked five or six days a week.

46.    Carmichael typically worked fifty hours a week, but occasionally he worked much more.

47.    For example, there were weeks when Carmichael worked in excess of eighty hours.

48.    Carmichael was not paid for all of the hours he worked.  For example, in a week where he worked in excess of forty hours, he might be paid for less than forty hours.

8

49.     Carmichael was not paid overtime for all the overtime hours he worked.  For example, in a week where he worked in excess of forty hours, he might be paid for more than forty hours, but at a "straight time" rate of $20/hr. for every one of those hours (as opposed to being paid time-and-a-half, or $30/hr., for every hour after forty).

50.     Defendants did not maintain consistent nor accurate records of their employees' hour or pay.

51.     Except for those times that an employee repeatedly insisted on receiving a pay stub, Defendants would not provide employees with any written accounting of their hours and pay.

52.     Indeed, rather than preserve them as required by law, Defendants regularly discarded employees' time cards.  Carmichael personally saw employee time cards being disposed of in Defendants' trash cans.

53.     Skip Follett gave changing and inconsistent explanations for how his employees were paid:

      a.  Mr. Follett stated that employees would be paid for time driving Ram Jack vehicles, but would not be paid for time riding in Ram Jack vehicles.

      b.  Upon information and belief, Mr. Follett stated to some employees that they would be paid for time riding in Ram Jack vehicles on the way to job sites, but would not be paid for time riding back from job sites.

      c.  Mr. Follett stated that employee hours would be tracked in two separate tallies, with one tally for hours at the Chardon location and at actual job

sites, and a second tally for hours driving or riding Ram Jack vehicles. Upon information and belief, the purpose of tallying these hours separately was to reduce below forty the total number of hours in any given tally, and thus justify the decision not to pay overtime.

d. Mr. Follett stated that employees would not be paid overtime, but would be paid straight time for all hours worked in a week.

e. Mr. Follett stated that employees were not permitted to take lunch breaks. Mr. Follett stated that employees would be docked one hour of pay for taking a lunch break, even if the lunch break lasted less than one hour.

f. Mr. Follett stated that employees' pay would be docked to compensate for alleged damages to Ram Jack equipment.

54. Upon information and belief, Mr. Follett also engaged in other practices designed to not pay his employees.

55. Upon information and belief, for the course of several pay periods in early 2021, Defendants ceased paying some employees entirely. Mr. Follett told employees he was "banking hours," and that Defendants would pay them for their hours worked at some later point in time. Upon information and belief, Defendants did not pay those employees for those hours.

56. Carmichael repeatedly complained to Skip Follett about improper pay.

57. Despite Carmichael's complaints, Defendants did not correct its pay practices.

58. Carmichael's last day working for Defendants was August 13, 2021.

59.     At the time that he ceased working for Defendants, Defendants remained in possession of certain tools and equipment owned by Carmichael, including a MAC air ratchet (worth about $300), a green drill bit case with bits (worth about $60), and a heavy chain and lock (worth about $80).  As of the date of this Complaint, those items have not been returned to Carmichael.

## **COLLECTIVE ACTION ALLEGATIONS**

60.     Plaintiff incorporates by reference the facts and allegations of the preceding paragraphs.

61.     All of Defendants' laborers were subject to the same illegal pay practices that Carmichael was subject to.

62.     Carmichael therefore seeks to prosecute his FLSA claims as a collective action on behalf of all persons similarly situated, that is: all persons who are, or were formerly, employed by Defendants in Ohio, from three years before the filing of the Complaint in this case to the entry of judgment in this case (the "Collective Action Period"), to perform foundation inspection or repair services (the "Collective Action Plaintiffs").

63.     At all relevant times, Carmichael and the Collective Action Plaintiffs have been subjected to wage and hour policies implemented by Defendants that culminated in a willful failure and refusal to pay Carmichael and the Collective Action Plaintiffs the minimum wage and/or proper overtime wages.

64.     Specifically, during the Collective Action Period Carmichael and the Collective Action Plaintiffs were employed by Defendants, and regularly worked in excess of

forty hours per workweek for Defendants. Defendants willfully violated the rights of Carmichael and the Collective Action Plaintiffs under the FLSA by not paying Carmichael and the Collective Action Plaintiffs (i) the federal minimum wage for all hours worked for Defendants, and (ii) overtime wages equal to one-and-one-half their normal hourly wage for all hours worked for Defendants in excess of forty hours in a workweek.

65.     The Collective Action Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to the Collective Action Plaintiffs via first class mail to the last address known to Defendant, and via text to the last known cell phone number known to Defendant.

66.     The collective action is so numerous that joinder of all Plaintiffs is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently under the sole control of the Defendant, upon information and belief there are more than twenty Plaintiffs of the collective action who worked for Defendants during the Collective Action Period as non-exempt hourly employees, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

67.     Carmichael will fairly and adequately protect the interests of the Collective Action Plaintiffs: Carmichael has retained counsel that is experienced and competent

in the fields of employment law and collective action litigation.  Carmichael has no interests that are contrary to or in conflict with the Collective Action Plaintiffs.

68.     The Collective Action Plaintiffs are similarly situated to Carmichael in that, upon information and belief, Defendants had a policy and practice of willfully disregarding and purposefully evading recordkeeping requirements of the FLSA and OMFWSA by failing to maintain accurate and complete records of hours and pay.

69.     The Collective Action Plaintiffs are also similarly situated to Carmichael in that, upon information and belief, Defendants had a policy and practice of not paying employees at all for certain hours of work, including hours spent in transit, and hours docked for lunch.

70.     The Collective Action Plaintiffs are also similarly situated to Carmichael in that, upon information and belief, Defendants had a policy and practice of not paying employees overtime premium wages.

71.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual wages and overtime wages due Defendants' employees.

72.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all Collective Action Plaintiffs is impracticable.  Furthermore, inasmuch as the damages suffered by individual Collective Action Plaintiffs might be relatively small, the expense and burden of individual litigation make it virtually impossible for the Plaintiffs of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

73.   Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual Plaintiffs because Defendants acted on grounds generally applicable to all Plaintiffs.   Among the common questions of law and fact common to all Plaintiffs are:

a.   Whether Defendants "employed" Carmichael and the Collective Action Plaintiffs within the meaning of the FLSA;

b.   Whether Defendants failed to keep true and accurate records of hours worked by, and wages paid to, Carmichael and the Collective Action Plaintiffs;

c.   What proof of hours worked is sufficient, where the employer fails in its duty to maintain records of such hours;

d.   Under what circumstances an employer need and need not pay an employee for time spent in transit, including under the Portal-to-Portal Act;

e.   Whether Defendants failed to pay Carmichael and the Collective Action Plaintiffs for all hours of work;

f.   Whether Defendants failed to pay Carmichael and the Collective Action Plaintiffs overtime premium wages for hours worked in excess of forty hours a week;

g.   Whether Defendants' violations of the FLSA are willful as that term is used in the context of those statutes;

h.   Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interests, costs and disbursements and attorneys' fees.

74.    Carmichael knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

75.    Carmichael has consented in writing to be a part of this action pursuant to 29 U.S.C. §216(b). Carmichael's signed consent form is attached as Exhibit A.

## OHIO CLASS ACTION ALLEGATIONS

76.    Plaintiff incorporates by reference the facts and allegations of the preceding paragraphs.

77.    All of Defendants' laborers were subject to the same illegal pay practices that Carmichael was subject to.

78.    Carmichael therefore seeks to prosecute his OMFWSA claims both individually and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure on behalf of all similarly situated individuals in the State of Ohio, that is: all persons who are, or were formerly, employed by Defendants in Ohio, from three years before the filing of the Complaint in this case to the entry of judgment in this case (the "Class Period"), to perform foundation inspection or repair services (the "Ohio Rule 23 Class").

79.    The members of the proposed Ohio Rule 23 Class are so numerous that joinder of all members is impractical and inefficient such that the requirements of Rule 23(a)(1) are met. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently under the sole control of the Defendant, upon information and belief there are more than twenty member of the Ohio Rule 23 Class.

80.     There are common questions of law and fact affecting the member of the Ohio Rule 23 Class, including:

    a.  Whether Defendants"employed" Carmichael and the members of the Ohio Rule 23 Class within the meaning of the OMFWSA;

    b.  Whether Defendants failed to keep true and accurate records of hours worked by, and wages paid to, Carmichael and the members of the Ohio Rule 23 Class;

    c.  What proof of hours worked is sufficient, where the employer fails in its duty to maintain records of such hours;

    d.  Under what circumstances an employer need and need not pay an employee for time spent in transit under the OMFWSA;

    e.  Whether Defendants failed to pay Carmichael and the members of the Ohio Rule 23 Class for all hours of work;

    f.  Whether Defendants failed to pay Carmichael and the members of the Ohio Rule 23 Class overtime premium wages for hours worked in excess of forty hours a week;

    g.  Whether Defendants' violations of the OMFWSA are willful as that term is used in the context of those statutes;

    h.  Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interests, costs and disbursements and attorneys' fees.

The requirements of Rule 23(a)(2) are met.

81. Carmichael's claims are typical of the claims of the Rule 23 Class as a whole. Carmichael and the Ohio Rule 23 Class have suffered harm due to Defendants' failure to pay them the Ohio minimum wage for all hours worked, and due to Defendants' failure to pay them overtime compensation equal to one-and-one-half their normal hourly wage for all hours worked in excess of forty hours in a workweek. The requirements of Rule 23(a)(3) are met.

82. Carmichael will fairly and adequately protect the interests of the Collective Action Plaintiffs: Carmichael has retained counsel that is experienced and competent in the fields of employment law and collective action litigation. Carmichael has no interests that are contrary to or in conflict with the Collective Action Plaintiffs. The requirements of Rule 23(a)(4) are met.

83. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all Collective Action Plaintiffs is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Plaintiffs might be relatively small, the expense and burden of individual litigation make it virtually impossible for the Plaintiffs of the collective action to individually seek redress for the wrongs done to them. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices. Certification under Rule 23(b)(3) is appropriate.

84. There will be no difficulty in the management of this action as a collective action.

85.   Plaintiff intends to send notice to all members of the proposed Ohio Rule 23 Class to the extent required by Rule 23.

## COUNT ONE
**On Behalf of Plaintiff and the Collective Action Plaintiffs Under the FLSA**

86.   Plaintiff George Carmichael, on behalf of himself and the Collective Action Plaintiffs, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

87.   Carmichael and the Collective Action Plaintiffs were not paid the federal minimum wage for all hours worked for Defendants.

88.   Carmichael and the Collective Action Plaintiffs were not paid one-and-one-half times their hourly wage for all hours worked for Defendants in excess of forty hours in a workweek.

89.   As a result of Defendants' willful failure to pay Plaintiff George Carmichael and each of the Collective Action Plaintiffs wages, including overtime wages, Defendants violated the FLSA, 29 U.S.C. §201 et. seq..

90.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

91.   Due to Defendants' FLSA violations, Plaintiff and the Collective Action Plaintiffs are entitled to recover from Defendants unpaid compensation and unpaid overtime compensation, in an amount to be determined at trial, and an additional equal amount as liquidated damages, plus interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT TWO
## On Behalf of Plaintiff and the Ohio Rule 23 Class Under the OMFWSA

92.     Plaintiff George Carmichael, on behalf of himself and the Ohio Rule 23 Class, repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

93.     Carmichael and the Ohio Rule 23 Class were not paid the Ohio minimum wage for all hours worked for Defendants.

94.     Carmichael and the Ohio Rule 23 Class were not paid one-and-one-half times their hourly wage for all hours worked for Defendants in excess of forty hours in a workweek.

95.     As a result of Defendants' failure to pay Plaintiff George Carmichael and the members of the Ohio Rule 23 Class wages, including overtime wages, Defendants violated the OMFWSA, O.R.C. §§4111.01 et. seq..

96.     The foregoing conduct, as alleged, constitutes a willful violation of the law, within the meaning of the OMFWSA, O.R.C. §4111.14(J).

97.     Due to Defendants' OMFWSA violations, Plaintiff and the members of the Ohio Rule 23 Class are entitled to recover from Defendants unpaid compensation and unpaid overtime compensation, in an amount to be determined at trial, plus liquidated damages as permitted by OMFWSA, plus interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to OMFWSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff George Carmichael, on behalf of himself and the Collective Action Plaintiffs, respectfully requests that this Court grant the following relief:

(a)    Designation of this action as a collective action on behalf of the Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b), and appointing Plaintiff George Carmichael and his counsel to represent the Collective Action Plaintiffs;

(b)    Award Plaintiff and the Collective Action Plaintiffs compensatory damages for unpaid wages, including unpaid wages at the statutory overtime rate, due to Plaintiff and the Collective Action Plaintiffs under the FLSA;

(c)    Award Plaintiff and the Collective Action Plaintiffs liquidated damages as a result of Defendants' willful failure to pay wages and overtime wages under the FLSA;

(d)    Award Plaintiff and the Collective Action Plaintiffs interest (including pre- and post-judgment interest);

(e)    Award Plaintiff and the Collective Action Plaintiffs their costs of this action, including reasonable attorneys' fees; and

(f)    Such other and further relief as to this Court appears necessary and proper.

**AND WHEREFORE**, Plaintiff George Carmichael, on behalf of himself and on behalf of the Ohio Rule 23 Class,  respectfully requests that this Court grant the following relief:

(a)    Certify this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the Ohio Rule 23 Class;

(b)    Appoint Plaintiff George Carmichael as Class Representative and appoint his counsel as Class Counsel;

(c)    Award Plaintiff and the members of the Ohio Rule 23 Class compensatory damages for unpaid wages, including unpaid wages at the statutory overtime rate, due to Plaintiff and the Collective Action Plaintiffs under the OMFWSA;

(d)    Award Plaintiff and the members of the Ohio Rule 23 Class liquidated damages as a result of Defendants' willful failure to pay wages under the OMFWSA;

(e)    Award Plaintiff and the members of the Ohio Rule 23 Class interest (including pre- and post-judgment interest);

(f)    Award Plaintiff and the members of the Ohio Rule 23 Class their costs of this action, including reasonable attorneys' fees; and

(g)    Such other and further relief as to this Court appears necessary and proper.

**AND WHEREFORE**, Plaintiff George Carmichael, on behalf of himself, respectfully requests that this Court order the return of his tools and equipment in Defendants' possession.

21

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, by and through his undersigned counsel, hereby demands a jury

trial on all causes of actions and claims for which he has a right to a jury trial.

Dated:        October 12, 2021

                                Respectfully Submitted,

                                GRANOVSKY & SUNDARESH PLLC

        By:     _____

                                BENJAMIN R. DELSON (Ohio Bar # 97257)
                                ALEXANDER GRANOVSKY (Ohio Bar # 92900)
                                **GRANOVSKY & SUNDARESH PLLC**
                                600 Superior Ave. East, Suite 1300
                                Cleveland, Ohio 44114
                                Tel. (216) 600-7994 / Fax (646) 417-5500
                                delson@g-s-law.com / ag@g-s-law.com

                                *Attorneys for Plaintiff George Carmichael*

DocuSign Envelope ID: 63C70E20-E554-4115-BEC1-CEEAB1F6DED3

**EXHIBIT A**

| | |
|---|---|
| GEORGE CARMICHAEL, on behalf of himself and all other persons similarly situated,<br><br>        *Plaintiff,*<br><br>    v.<br><br>RAM JACK OHIO LLC and RICHARD FOLLETT,<br><br>      *Defendants.* | **CONSENT TO BE<br>PARTY PLAINTIFF** |

GEORGE CARMICHAEL states:

1. I am a plaintiff in the above-captioned action. My address is 28 Leslie Street, Apt. 4, Geneva OH 44041.

2. Pursuant to 29 USC §216(b), this action asserts claims under the Fair Labor Standards Act ("FLSA"), 29 USC §201 et seq., on behalf of myself and all other employees similarly situated. Pursuant to 29 USC §§216(b) and 256, I consent to being a party plaintiff in this action and to the filing and prosecution of the above referenced FLSA claims on my behalf and on behalf of all other employees similarly situated.

Dated:        10/14/2021<br>                _____, 2021

                                                  E58C305A01DE494

                                  GEORGE CARMICHAEL